Shifa Alkhatib: AZ Bar No. 031149
**HKM Employment Attorneys, LLP**
1 N. 1st Street, Suite 711
Phoenix, Arizona 85018
Tel & Fax:480.930.4747
salkhatib@hkm.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Christina Barnett**, an Arizona resident, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **V. T. Motors LLC,** a Delaware Limited Liability Company, d/b/a/ Van Chevrolet, | |
| Defendant. | **(Jury Trial Requested)** |

Plaintiff Christina "Chris" Barnett ("Plaintiff"), for his complaint against Defendant V.T. Motors LLC ("Defendant") hereby alleges as follows:

**PARTIES**

1. Plaintiff was at all times relevant hereto, a resident of Maricopa County, Arizona.

2. Upon information and belief, Defendant is a Delaware Company, which is registered to conduct business and is currently doing business in the State of Arizona.

1

**JURISDICTION AND VENUE**

3. All acts complained herein occurred in Maricopa County, Arizona, and this Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant to the Americans with Disabilities Act and the ADA Amendments Act (collectively referred to as **"ADA"**), 42 U.S.C. §§ 12101, *et seq.*, Title VII of the Civil Rights Act of 1964 42 U.S.C. §§2000e *et seq.* (**"TITLE VII"**), and the Arizona Civil Rights Act (**"ACRA"**).

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Complaint arise under federal law.

5. Plaintiff's state law claims under the Arizona Civil Rights Act, A.R.S. §41-46 *et seq.*("ACRA") are sufficiently related to his federal claims that it forms the same case or controversy. This Court therefore has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

7. Plaintiff was, at all relevant times, an employee of Defendant within the meaning of the ADA, TITLE VII and the ACRA.

8. At all relevant times, Defendant has continuously been an employer within the meaning of the ADA, Title VII and the ACRA.

9. Plaintiff has exhausted all administrative and statutory prerequisites necessary to commence this action, and therefore jurisdiction is proper.

10. Personal jurisdiction in this Court is proper.

11. Venue in this Court is proper.

## FACTUAL ALLEGATIONS

12. At all times relevant, Plaintiff was an employee of Defendant.

13. Upon information and belief, Defendant is a Corporation registered to conduct business in Arizona.

14. Plaintiff was initially hired by Defendant on July 16, 2018.

15. At the time of his termination and at all times relevant, Plaintiff held the title of Sales Assistant.

16. At all times relevant, Plaintiff was qualified to perform the essential functions of his position.

17. At all times relevant, Plaintiff performed at or above a satisfactory level.

18. Plaintiff has been disabled since he was 20 years old.

19. Plaintiff has an 80% right quadriceps resection, a hip replacement in his right hip, fibromyalgia, myofascial pain syndrome, anxiety, PTSD, migraines with Aura and a torn labrum in his left hip.

20. In September of 2019, Plaintiff started walking with a cane due to his disabilities.

21. For the first 2-3 weeks that Plaintiff used his cane, his supervisor, Ron Daly

("Ron"), who works for the Defendant, would tell Plaintiff that the cane was "driving him nuts" and that Plaintiff really needed to do something about it because the cane was driving him "fucking crazy."

22.     On November 19, 2019, Plaintiff told his General Manager, Matt Carrera, that he could not work over 8 hours per day as it was causing him additional health issues and his walking was getting worse due to the length of hours he was required to work.

23.     Despite this request to his General Manager, Plaintiff was frequently asked to work over 8 hours per day.

24.     On November 26, 2019, Ron asked Plaintiff to fuel and detail a vehicle.

25.     Plaintiff responded by informing Ron that his hips were causing him pain, and he request that another assistant, Roxanne Mendoza, do it.

26.     Ron replied by telling Plaintiff he had to do it despite his pain.

27.     On December 11, 2019, Plaintiff worked all day until he told Ron he could not stay at work until 5:30 or 6 P.M. due to doctor's appointments at which point he was abruptly sent home before 2 p.m.

28.     On December 18, 2019, Defendant employee Steve Sekula ("Steve") called Plaintiff "she" numerous times.

29.     Plaintiff has told Steve numerous times that he goes by "him, he, his" pronouns.

30.     Plaintiff complained about Steve's pronoun misuse to his manager Scott Daly and human resources representative, Gina Torok.

4

31. On several occasions, Ron made comments and jokes about Plaintiff's sexuality, including telling Plaintiff that he "would not know how to handle women in a sexual manner" due to his transgender identity.

32. Plaintiff again reported these comments to the human resources department, but no investigation was done and no action was taken.

33. On December 31, 2019, Ron told Plaintiff he needed Plaintiff to go find a vehicle in the lot.

34. Plaintiff asked if Roxie could do it because she was sitting at his desk and Plaintiff's hips were hurting him.

35. Ron said no, that he had seen Plaintiff walking around all morning, that he did not care, and Plaintiff should go do it.

36. On December 30, 2019, Plaintiff obtained a letter from his physician at the Mayo Clinic that he had been advised to limit his walking and physical activity, and to limit his workday to eight hours.

37. On January 1, 2020, Plaintiff provided the Defendant with the letter from his physician requesting accommodations.

38. On January 2, 2019, despite attempts to explain his need for accommodations due to his disability, the Defendant did not make any accommodations.

39. Despite sending the doctor's note to Steve Fisher, his Controller, Plaintiff's supervisors continued to make fun of Plaintiff and his cane, continued to force him to walk around all day, did not limit his workday to 8 hours, and did not limit his physical activity

as requested.

40. On January 17, 2020, Plaintiff requested medical leave under the Families Medical Leave act for medical issues which were exacerbated due to the failure to accommodate him.

41. On January 27, 2020, Roxanne Mendoza told Plaintiff that his supervisors told everyone Plaintiff was fired.

42. Plaintiff remained on medical leave until approximately April 28, 2020.

43. Plaintiff then requested to return to work.

44. On April 28, 2020, date, Defendant advised Plaintiff, via email, that he was being furloughed indefinitely.

45. Plaintiff has still not been offered his position back, and his furlough was in effect, a termination.

46. Upon information and belief, Plaintiff was terminated because of his disability, request for a reasonable accommodation, and his sex.

47. Upon information and belief, Plaintiff was terminated for exercising his rights under the ADA, Title VII, and the ACRA.

48. At all times relevant, Plaintiff had a disability that substantially limited a major life activity.

49. At all relevant times, Plaintiff was capable of performing the essential functions of his position with or without a reasonable accommodation.

50. At all relevant times, Plaintiff satisfactorily performed the essential

functions of his position.

51. At all times relevant Plaintiff was a member of a protected class, male, and identified as a transgender man.

52. Despite his diligent efforts, Plaintiff has been unable to secure comparable employment since his employment was unlawfully severed by Defendant.

53. As a result, Plaintiff was damaged in an amount to be proven at trial.

54. On February 12, 2020, Plaintiff filed an EEOC charge of discrimination.

55. On or about May 4, 2021, Plaintiff received Notice of the Right Sue from the U.S. Equal Employment Opportunity Commission.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE ADA

56. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

57. The ADA prohibits discrimination against a qualified individual with a disability in regard to terms, conditions and privileges of employment. 42 U.S.C. § 12212(a).

58. Plaintiff has an impairment that substantially limits a major life activity.

59. Plaintiff suffers from a disability which is a disability as defined by the ADA.

60. Defendant is an employer under the ADA.

61. Defendant knew of Plaintiff's disability.

62. Plaintiff is qualified to perform the essential functions of his position with

or without a reasonable accommodation.

63. Defendant discriminated and retaliated against plaintiff by terminating him due to his disabilities and requesting a reasonable accommodation.

64. Defendant treated Plaintiff disparately as compared to other similar situated non-disabled employees because of his disability.

65. Plaintiff's disability was at the very least a motivating factor in Defendant's discriminatory conduct.

66. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, *inter alia*, termination of employment.

67. As a result, Plaintiff was harmed in an amount to be proven at trial.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADA

68. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

69. The ADA prohibits discrimination against any individual because such individual engaged in protected activity under the ADA. *See* 42 U.S.C § 12203(a).

70. Plaintiff engaged in protected activity by requesting reasonable accommodations.

71. Defendant retaliated against Plaintiff by terminating him due to his disability.

72. Plaintiff's disability was at the very least a motivating factor in Defendant's

retaliatory conduct.

73. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, *inter alia*, termination of employment.

74. As a result, Plaintiff was harmed in an amount to be proven at trial.

## COUNT III
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

75. Plaintiff reasserts and re-alleges each and every paragraph as if restated herein.

76. The ADA makes it unlawful if an employer does not make "reasonable accommodations" available to the employee who has a known disability who can perform the position's essential functions.

77. Defendant failed to make reasonable accommodations available to Plaintiff, including failing to prevent discriminatory and harassing behavior, as well as not providing her time to perform her tasks that required sitting at a desk.

78. Defendant failed to engage in the interactive process.

79. Defendant is liable for the intentional acts and omissions of its agents and employees.

## COUNT IV
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ACRA

80. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

81. The Arizona Civil Rights Act, A.R.S. §41-1463(B)(1)(2), prohibits employers from unlawfully discriminating against an employee on the basis of his or her disability.

82. Plaintiff was a disabled person within the meaning of the ACRA.

83. Plaintiff has an impairment that substantially limits one or more major life activities.

84. Defendant was an employer within the meaning of the ACRA.

85. Defendant knew of Plaintiff's disability.

86. Plaintiff was objectively qualified to perform the essential functions of the job with reasonable accommodations.

87. Defendant discriminated and retaliated against Plaintiff by terminating him due to his disability.

88. Plaintiff's disability was at the very least a motivation factor in Defendant's discriminatory conduct.

89. As a result, Plaintiff was harmed in an amount to be proven at trial.

## COUNT V
## RETALIATION IN VIOLATION OF THE ACRA

90. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

91. The Arizona Civil Rights Act, A.R.S. §41-1464(A) prohibits retaliation against an employee who opposes a practice forbidden by the ACRA.

92. Plaintiff engaged in protected conduct when he reported harassment based

on his sex and when he requested a reasonable accommodation.

93. Because he engaged in protected activity, Plaintiff was subjected to adverse employment actions including, *inter alia*, termination.

94. As a result, Plaintiff was harmed in an amount to be proven at trial

## COUNT VI
## SEX-BASED DISCRIMINATION IN VIOLATION OF TITLE VII

95. Plaintiff hereby re-alleges and incorporates the preceding paragraphs of this complaint.

96. Plaintiff is a member of a protected group: male.

97. Defendant has violated Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1), by engaging in direct discrimination and disparate treatment of Plaintiff because of his sex, specifically, for his identity as a transgender man.

98. The disparate treatment and hostile environment were un-welcomed by the Plaintiff.

99. As a result of the foregoing, Defendant is liable to Plaintiff for violation of Title VII.

100. Defendant's acts of discrimination in this regard were unlawful and intentional.

101. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of severe emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

102. Plaintiff suffered irreparable injury and monetary damages as a result of

Defendant's discriminatory practices until this Court grants relief.

## COUNT VII
## RETALIATION IN VIOLATION OF TITLE VII

103. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

104. It shall be an unlawful employment practice for an employer to discriminate against any of its employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42. U.S.C.A § 2000e-3.

105. Defendant is an employer for purposes of Title VII.

106. Plaintiff is an employee for purposes of Title VII.

107. Plaintiff engaged in protected activity when he complained to Defendant regarding the discriminatory practices of Defendant because of his sex in violation of Title VII.

108. In retaliation for reporting Defendant's discriminatory practices in violation of Title VII, Plaintiff was subjected to adverse employment actions including termination.

109. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## CONCLUSIONS AND PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court order such relief as is necessary to make his whole, including, without limitation:

A. Declaring the acts and practices complained of herein are in violation of

the ADA, TITLE VII and the ACRA;

B. An award of damages for all counts in an amount to be proven at trial;

C. An award of the compensatory and punitive damages in an amount to be proven at trial;

D. An award back pay and front pay (deferring to Title VII remedial structure allowing award of back pay and other equitable relief (*see* 42 U.S.C. § 2000e-5(g)(1));

E. Pre- and post-judgment interest;

F. Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation in an amount to be proved at trial;

G. Reasonable attorney's fees, costs, and other expenses; and

H. Any other remedies or judgements deemed just and equitable by this court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED this 9th day of July 2021:

**HKM Employment Attorneys, LLP**

By: */s/ Shifa Alkhatib*
  Shifa Alkhatib
  Attorney for Plaintiff