1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8   Christina Barnett,                )    No.  CV-21-01195-PHX-SPL
                                       )
9                                      )
                   Plaintiff,          )
10  vs.                                )    **ORDER**
                                       )
11                                     )
    V.T. Motors LLC,                   )
12                                     )
                                       )
13                 Defendant.          )
                                       )
14  _____)

15       On July 9, 2021, Plaintiff Christina "Chris" Barnett[1] filed this employment

16  discrimination action against his employer, Defendant V.T. Motors LLC. (Doc. 1).

17  Plaintiff's Complaint alleges discrimination, retaliation, and failure to accommodate in

18  violation of the Americans with Disabilities Act; disability discrimination and retaliation

19  in violation of the Arizona Civil Rights Act; and sex discrimination and retaliation in

20  violation of Title VII. (Doc. 1 at 7–12).

21       On July 30, 2018, about two weeks after he was initially hired by Defendant,

22  Plaintiff signed a "Mutual Agreement to Arbitrate Claims" (the "Arbitration Agreement"

23  or "Agreement"). (Doc 10-1; Doc. 12 at 3). The Arbitration Agreement states in relevant

24  part:

25           The Employee and the Dealership will resolve by arbitration
             all statutory, contractual, and common law claims . . . that
26           arise out of or relate to the Employee's hiring, employment,

27  _____

28  [1] Plaintiff is a transgender man who goes by "him, he, his" pronouns. (Doc. 1 ¶¶ 29, 51).

1
2
3

> or termination of employment by the Dealership, including: claims of discrimination, harassment, or retaliation under any federal, state or local statute or ordinance, including but not limited to Title VII . . . and the Americans with Disabilities Act . . . .

4
5
6

(Doc. 10-1 at 3). The Agreement goes on to set forth various arbitration procedures. (Doc. 10-1). On the basis of the Arbitration Agreement, the Defendant filed its Motion to Dismiss Case and Compel Arbitration, which is now before the Court. (Doc. 10).

7

## I.    LEGAL STANDARD

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

The Federal Arbitration Act ("FAA") "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4) (other citations omitted). Courts must decide these questions "according to the standard used by district courts in resolving summary judgment motions pursuant to [Federal Rule of Civil Procedure ("FRCP")] 56." *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011). If a district court finds that an arbitration agreement is valid and enforceable, "then it should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims, including those relating to the contract as a whole." *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1276–77 (9th Cir. 2006).

23
24
25
26
27
28

"Arbitration agreements are presumptively enforceable under the FAA 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Taleb v. AutoNation USA Corp*., No. CV06-02013-PHX-NVW, 2006 WL 3716922, at *2 (D. Ariz. Nov. 13, 2006) (quoting 9 U.S.C. § 2). The FAA's saving clause, however, "permits agreements to arbitrate to be invalidated by generally applicable contract

defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted). Thus, "[i]n determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In determining the validity and enforceability of the Arbitration Agreement here, then, Arizona's law of contracts controls. *Taleb*, 2006 WL 3716922, at *2.

## II.   DISCUSSION

In this case, there is no dispute that the Arbitration Agreement encompasses Plaintiff's claims. The parties disagree, however, as to whether the Agreement is valid and enforceable. Plaintiff advances two arguments challenging the validity of the Arbitration Agreement: (1) there was no mutual assent to the Agreement, and (2) the Agreement is unconscionable.

### a.  Mutual Assent

First, Plaintiff argues that Defendant has failed to provide evidence demonstrating that the parties mutually assented to the Arbitration Agreement (Doc. 11 at 3–4). Specifically, Plaintiff argues that the Arbitration Agreement, as attached to Defendant's Motion, "is merely hearsay with no party affidavit authenticating it or laying any foundation or providing factual analysis of circumstance surrounding the signature." (Doc. 11 at 4). But Rule 56, the standard under which motions to compel arbitration are decided, "was amended in 2010 to eliminate the unequivocal requirement that evidence . . . must be authenticated," although "the amended Rule still requires that such evidence 'would be admissible in evidence' at trial." *Romero v. Nev. Dep't of Corr.*, 673 Fed. Appx. 641, 644 (9th Cir 2016) (quoting Fed. R. Civ. P. 56(c)(4)). Moreover, authentication is achieved under Federal Rule of Evidence 901(a) through "evidence sufficient to support a finding that the item is what the proponent claims it is." Here, Plaintiff does not dispute the authenticity of the Arbitration Agreement attached to

Defendant's Motion as Exhibit A nor the authenticity of his signature on the Agreement. In fact, Plaintiff's own affidavit admits that he signed the Arbitration Agreement provided to the Court by Defendant. (Doc. 12 at 3). Plaintiff's authentication argument therefore does not carry weight.

As to Plaintiff's hearsay argument, a document that "itself affects the legal rights of the parties" is not hearsay. Fed. R. Evid. 801(c) adv. com. note; *see also Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000) (holding that "a legally operative document that defines the rights and liabilities of the parties" is not hearsay); *United States v. Rubier*, 651 F.2d 628, 630 (9th Cir. 1981) ("Facts of independent legal significance constituting a contract which is at issue are not hearsay."). Thus, courts routinely hold that arbitration agreements are not hearsay when deciding motions to compel arbitration. *See, e.g.*, *Izett v. Crown Asset Mgmt., LLC*, No. 18-cv-05224-EMC, 2019 WL 4845575, at *4 (N.D. Cal. Oct. 1, 2019); *De La Vega v. Sterling Jewelers Inc.*, No. SACV 17-440 JVS (KESx), 2017 WL 10605190, at *3 (C.D. Cal. July 7, 2017); *Bauscher v. Brookstone Sec., Inc.*, No. 4:12-cv-00028-BLW, 2012 WL 3100383, at *3 (D. Idaho July 30, 2012). Likewise, the Arbitration Agreement at issue in this case defines the rights and obligations of the parties and is not hearsay.

Having dispensed of Plaintiff's evidentiary arguments, the signed Arbitration Agreement is clear evidence of mutual assent. Generally, "one who signs a written document is bound to know and assent to its provisions in the absence of fraud, misrepresentation, or other wrongful acts by the other party." *Teran v. Citicorp Pers.-to-Pers. Fin. Ctr.*, 706 P.2d 382, 384–85 (Ariz. Ct. App. 1985) (stating that absent an undertaking by one party to explain a document, it is immaterial that another party who signs a document does not understand its legal significance). Plaintiff alleges no such misconduct by Defendant, so he is bound to have assented to the terms of the Arbitration Agreement.

///

///

4

### b. Unconscionability

A contract, including an arbitration agreement, that is unconscionable is unenforceable. *See Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013). Unconscionability is evaluated "in the light of the general commercial background and the commercial needs of the particular trade or case . . . under the circumstances existing at the time of the making of the contract." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 57 (Ariz. 1995) (internal quotation marks omitted). The purpose of the unconscionability doctrine is "the prevention of oppression and unfair surprise . . . not of disturbance of allocation of risks because of superior bargaining power." *Id.* (internal quotation marks omitted). Plaintiff argues that the Arbitration Agreement is both procedurally and substantively unconscionable.

"Procedural unconscionability addresses the fairness of the bargaining process, which 'is concerned with "unfair surprise," fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.'" *Clark*, 307 P.3d at 79 (quoting *Maxwell*, 907 P.2d at 57–58). When assessing whether a contract is procedurally unconscionable, factors for a court to consider include: "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [and] whether alterations in the printed terms were possible." *Maxwell*, 184 Ariz. at 89 (internal quotation marks omitted). A court may also consider "whether the contract was separate from other paperwork, whether the contract used conspicuous typeface, and whether the contract was signed hurriedly and without explanation in emergency circumstances." *Dueñas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 768 (Ariz. Ct. App. 2014) (internal citations omitted). Ultimately, however, "the fundamental question is whether one party to a contract has unfairly or surreptitiously deprived the other of the right of access to the courts." *Id.*

Plaintiff first argues that the Arbitration Agreement is procedurally unconscionable because it is "a take-it-or-leave-it" contract of adhesion. "[T]he

distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." *Broemmer v. Abortion Servs. of Phx., Ltd.*, 840 P.2d 1013, 1016 (Ariz. 1992) (holding a contract was adhesive where it was standardized, not negotiated, and presented to the plaintiff without explanation as a condition of receiving services). Here, Plaintiff's affidavit asserts that he was rushed into signing documents including the Arbitration Agreement, that he did not believe he had any power to negotiate the documents, and that he felt he had to sign the documents in order to be employed by Defendant. The Arbitration Agreement is thus a contract of adhesion under Arizona law.

Still, "[a] contract of adhesion is fully enforceable according to its terms unless certain other factors are present." *Id.* (internal quotation marks and citations omitted). An adhesive contract is unenforceable only if it either falls outside the reasonable expectations of the weaker party or is substantively unconscionable. *See id.*; *see also Longnecker v. Am. Express Co.*, 23 F. Supp. 3d 1099, 1109 (D. Ariz. 2014). Plaintiff makes no argument or assertion that the Arbitration Agreement is contrary to his reasonable expectations, so the Agreement is an unconscionable contract of adhesion only if it is substantively unconscionable.

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*, 907 P.2d at 58. A contract may be substantively unconscionable if it includes "terms so one-sided as to oppress or unfairly surprise an innocent party" or "an overall imbalance in the obligations and rights imposed by the bargain." *Id.* Plaintiff identifies four provisions of the Arbitration Agreement that he argues make the Agreement unconscionable: (1) Section 23, which allows for unilateral modification of the Agreement by Defendant only (Doc. 10-1 at 9); (2) Section 4, which, if Plaintiff files a discrimination charge with an administrative agency, allows Defendant to opt out of the Agreement and require Plaintiff to proceed in court with respect to the claims in the charge (Doc. 10-1 at 4); (3) Section 5, which requires that arbitration "be initiated within 180 days of the date the Employee became aware of the alleged harm or should have become aware of the alleged harm,

unless a longer time period for commencing actions is provided under federal or state statute" (Doc. 10-1 at 4); and (4) Section 20, which provides that "[t]he arbitration, including the hearing and record of the proceeding, are confidential," subject to narrow exceptions (Doc. 10-1 at 8).

As to Section 23, the modification provision, a unilateral modification clause does not render an arbitration agreement substantively unconscionable where such a clause has not been exercised. *See Longnecker*, 23 F. Supp. 3d at 1111. Plaintiff does not allege that Defendant has in any way modified the terms of the Arbitration Agreement to which he assented. Thus, Plaintiff's unconscionability argument falls flat.

As to Section 4, the administrative charge provision, Plaintiff points out that it allows Defendant to opt out of arbitration but does not allow the same for Plaintiff. (Doc. 11 at 10). Under Arizona law, non-mutual exceptions to arbitration requirements are not necessarily unconscionable. *See Wernett v. Serv. Phx., LLC*, No. CIV 09-168-TUC-CKJ, 2009 WL 1955612, at *8 (D. Ariz. July 6, 2009) (citing *Smith v. Logan*, 799 P.2d 1378, 1380 (Ariz. Ct. App. 1990)). For example, in *Smith*, the Arizona Court of Appeals held that a provision stating, "Buyer shall not have the right to demand arbitration if in default of any monies owed to SELLER," was not unconscionable because "[p]arties may make a distinction in their arbitration agreement between issues subject to arbitration and issues for the court to decide." *Smith*, 799 P.2d at 1280. On the other hand, in *Wernett*, the district court found unconscionable an arbitration provision with an unconditional exception for the employer to seek equitable remedies before a court but no such exception for employees. *Wernett*, 2009 WL 1955612, at *8.

The Arbitration Agreement's administrative charge provision is more like the arbitration exception in *Smith* than the one in *Wernett*. First, the provision applies only to particular issues—namely, discrimination claims—rather than to all possible claims, a type of scheme to which the *Smith* court gave approval. Second, mutuality is lost only under a specified condition, the filing of a discrimination charge by Plaintiff, unlike the employer's unfettered access to a judicial forum in *Wernett*. To be sure, an employee

filing a discrimination charge—an action they are entitled to take—is very different from a buyer defaulting on payments as in *Smith*. But a conditional exception of this sort is nevertheless significantly less beneficial to Defendant and does not create so severe of an imbalance between the parties as to be substantively unconscionable.

As to Section 5, the 180-day time limit, Plaintiff argues that the provision deprives him of the benefit of the continuing violations doctrine, which may apply to his claims, because the time period starts when Plaintiff became aware of or should have become of aware of the alleged harm. (Doc. 11 at 11); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–18 (2002). The language of Section 5 contains an important caveat, however: the 180-day time limit does not apply if federal or state statute provides a longer period to commence an action. The continuing violations doctrine is derived from statutory text, so the Arbitration Agreement therefore does not preclude its application.[2] *See id.* at 118; *Scott-Ortiz v. CBRE Inc.*, 501 F. Supp. 3d 717, 727 (D. Ariz. 2020). Because Section 5 provides that federal or state statutes of limitations supersede the 180-day time limit, it does not deprive Plaintiff of any remedies that would otherwise be available to him and is not substantively unconscionable. *Cf. Cir. City Stores, Inc.*, 279 F.3d at 894–95.

As to Section 20, the confidentiality provision, such provisions are unconscionable "if they favor the employer, if they are too broad, and if they essentially impose a gag order such that employees are 'unable to mitigate the advantages inherent in being a repeat player.'" *Longnecker*, 23 F. Supp. 3d at 1110 (quoting *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078 (9th Cir. 2007). The arbitration agreement at issue in *Longnecker* included a confidentiality provision similar to the one in this case, requiring that "anything and everything pertaining to the arbitration remain confidential." *Id.* The court in *Longnecker* held that the provision was unconscionable because it was "unfairly

---

[2] To the extent the continuing violations doctrine is not incorporated into the Agreement, the 180-day time limit would be substantively unconscionable. *See Cir. City Stores, Inc.*, 279 F.3d at 894. But even so, the provision would be severable. *See infra* p. 9; *Wernett*, 2009 WL 1955612, at *9.

8

one-sided," reasoning that the defendant companies would have knowledge of prior arbitrations in which they were involved while the plaintiffs, former employees of the companies, would be kept in the dark. *Id.* The same is true in this case, and given the similarly sweeping scope of the confidentiality provisions in this case as in *Longnecker*, the same result follows: the Arbitration Agreement's confidentiality provision is unconscionable. *Cf. Monsanto v. DWW Partners, LLLP*, No. CV-09-01788-PHX-FJM, 2010 WL 234952, at *3 (D. Ariz. Jan. 15, 2010) (finding "a term providing for communications in connection with arbitration proceedings to be privileged" was not unconscionable because it was "neither overly broad nor unfairly one-sided").

Although the confidentiality provision is unconscionable, it is severable from the rest of the Arbitration Agreement, meaning the Agreement itself is not unconscionable and is still enforceable. When a court determines that a contract clause is unconscionable, the court has three options: "(1) refuse to enforce the contract; (2) enforce the remainder of the contract without the unconscionable clause; or (3) limit the application of the unconscionable clause as to avoid any unconscionable result." *Batory v. Sears, Roebuck and Co.*, 456 F. Supp. 2d 1137, 1141 (D. Ariz. 2006). "A contract may be severed, however, only if its terms clearly show the parties intended it to be severable." *Mousa v. Saba*, 218 P.3d 1038 (Ariz. Ct. App. 2009). Here, the parties clearly set forth their intention that the Agreement be severable through a severability clause: "Should any provision of this Agreement be found to be unenforceable, such portion will be severed from the Agreement and the remaining portions shall remain in full force and effect." (Doc. 10-1 at 9). As in *Longnecker*, where the arbitration provision also contained a severability clause, severing the confidentiality clause and otherwise enforcing the Agreement is appropriate and consistent with the FAA and Arizona public policy favoring arbitration. *Longnecker,* 23 F. Supp. 3d at 1111–12.

As a final matter, Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because the Agreement references and incorporates rules of the American Arbitration Association ("AAA") but Defendant did not provide the AAA rules for

Plaintiff's review. Plaintiff argues that, although incorporation of arbitration rules by reference is not itself unconscionable, all the circumstances of the Arbitration Agreement together amount to procedural unconscionability. The Arbitration Agreement was presented to Plaintiff as its own document requiring its own signature and was conspicuously labelled as "MUTUAL AGREEMENT TO ARBITRATE CLAIMS." (Doc. 10-1 at 3); *see Martin v. TEKsystems Mgmt. Inc.*, No. CV-20-02192-PHX-SPL, 2021 WL 2334389, at *4 (D. Ariz. June 8, 2021). Defendant did not "unfairly or surreptitiously" cause Plaintiff to sign the Agreement, *Dueñas*, 336 P.3d at 768, nor are the terms so one-sided as to be oppressive, *Maxwell*, 907 P.2d at 58. As in *Longnecker*, many of the Arbitration Agreement's provisions "are plainly intended to level the playing field" between Defendant and its employees. *Longnecker*, 23 F. Supp. 3d at 1112. For example, the Agreement permits discovery, requires Defendant to pay all but $150 of the arbitration fees and costs, and requires that arbitration be held in or near Plaintiff's city. (Doc. 10-1 at 5–6); *Longnecker*, 23 F. Supp. 3d at 1112. Thus, taking all of the circumstances together, the high bar of unconscionability is not met. Except for the confidentiality provision, the Arbitration Agreement is enforceable, and arbitration will be compelled.

## III.    CONCLUSION

When neither party requests a stay in the event a motion to compel arbitration is granted and all claims are subject to arbitration, a court has discretion to dismiss the action. *See 2151 Michelson, L.P. v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 754 Fed. Appx. 596, 597 (9th Cir. 2019); *Graham v. United Servs. Auto. Ass'n*, No. CV-20-02210-PHX-DWL, 2021 WL 2780865, at *5 (D. Ariz. July 2, 2021). Here, neither party has requested a stay. Defendant has moved only for the case to be dismissed and Plaintiff is silent on the issue. Moreover, the Arbitration Agreement encompasses all of Plaintiff's claims. The Court will thus exercise its discretion in favor of dismissal.

Finally, pursuant to Section 26 of the Arbitration Agreement and A.R.S. §§ 12-341

and 12-341.01, Defendant seeks its attorneys' fees and costs incurred in bringing the instant Motion. Defendants may file a separate motion seeking reasonable fees and costs to which it believes it is entitled in accordance with Local Rule of Civil Procedure 54.2. *See Martin*, 2021 WL 2334389, at *6.

   **IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Case and Compel Arbitration (Doc. 10) is **granted**.

   **IT IS FURTHER ORDERED** that this case is **dismissed without prejudice**. The Clerk of Court shall **terminate this action**.

   **IT IS FURTHER ORDERED** that Defendant shall file any application for attorneys' fees and costs in accordance with LRCiv. P. 54.2 by **December 17, 2021**.

   Dated this 3rd day of December, 2021.

Honorable Steven P. Logan
United States District Judge